IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| | : |
| MOBIAPPS, INC. | |
| | : |
| | |
| v. | : Civil Action No. DKC 2006-1071 |
| | |
| | : |
| QUAKE GLOBAL, INC. | |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution are (1) a motion to dismiss or transfer for improper venue and lack of personal jurisdiction filed by Defendant Quake Global, Inc. (paper 5) and (2) a motion for leave to file surreply filed by Plaintiff MobiApps, Inc. (paper 13).  The issues have been briefed and the court now rules, no hearing being deemed necessary.  *See* Local Rule 105.6.  For the reasons that follow, the court finds that personal jurisdiction is lacking over Defendant and the motion to dismiss or transfer will be granted.  Plaintiff will be directed to notify the court whether it agrees to transfer of the case to the United States District Court for the Southern District of California.  If consent is not forthcoming, the case will be dismissed.  In addition, Plaintiff's motion for leave to file surreply will be denied.[1]

---

[1]  Plaintiff also has filed a motion for a preliminary injunction and request for an expedited hearing.  (Paper 15).

I.  **Background**

Plaintiff MobiApps, Inc., alleges the following in its amended complaint.[2]  Plaintiff is a Texas corporation with its principal place of business in Bethesda, Maryland.  Plaintiff is a leading provider of hybrid terrestrial and satellite technologies for commercial communications.  Plaintiff develops, sells, and markets proprietary wireless application and device solutions.  Defendant is a California corporation with its principal place of business in San Diego, California.  Defendant designs, manufactures, and markets mobile satellite communications products for asset tracking and remote monitoring applications.

On or about February 27, 2003, Plaintiff and Defendant entered into an Amended and Restated Product Joint Development and License Agreement ("JDA") and an Amended and Restated Product Purchase Agreement ("PPA") (collectively, "Agreements").  Pursuant to the JDA, Plaintiff and Defendant collaborated to develop an application specific integrated circuit (referred to in the papers as "ASIC," "RF ASIC" and "ASIC Product") as well as other products to be used in the parties' plans to produce, sell, and market the ASIC Product.  In developing the ASIC Product, Plaintiff incurred expenses of at least $2 million and dedicated five employees on a full-time basis over a period of four years.

---

[2] Plaintiff filed its original complaint on April 29, 2006, and an amended complaint on May 3, 2006.

Plaintiff entered into the Agreements so that it and Defendant could work together to develop the ASIC Product and other products that would be marketed commercially by each party separately. Section 6.2 of the JDA provides in part that: "All Intellectual Property Rights in and to all inventions made and technical information developed jointly by Quake and MobiApps in regards to the ASIC Product shall be jointly owned by the parties, excluding the Q1500 RF Design, the RF Module, and any other RF products or designs developed solely by Quake for the ORBCOMM Systems." Section 6.3 of the JDA provides:

> Subject to the terms of this Restated Agreement, the ASIC Product shall be jointly owned by MobiApps and Quake. All Intellectual Property Rights in and to all inventions made and technical information developed jointly by Quake and MobiApps in the course of development of the ASIC Product ("Joint Inventions") shall belong jointly to Quake and MobiApps, and, excluding the Q1500 RF Design, each party shall have the independent right to exploit the ASIC Product and all Intellectual Property Rights in and to said Joint Inventions and said jointly developed technical information subject to the terms and conditions of this Restated Agreement. This Restated Agreement shall not be construed as granting or conferring any Intellectual Property Rights on either party except as expressly specified herein.

Section 2 of the JDA provides for the design and development of the ASIC Product. Section 2.1 provides that "[b]oth parties shall, in good faith, use their reasonable best efforts in collaborating to develop the ASIC Product. Both parties

3

acknowledge that Intrinsix Corp. of Westboro, Massachusetts has been selected and contracted by MobiApps to develop the RF ASIC Specification and it has completed that specification."[3]  Section 2.7.3 of the JDA provides that if "the RF ASIC does not meet the RF ASIC specification after the fourth production spin, the design and development effort shall cease and the Amended and Restated Product Joint Development and License Agreement and the Amended and Restated Product Purchase Agreement shall terminate in their entirety."

Pursuant to the JDA, Plaintiff contracted with Intrinsix Corp. ("Intrinsix"), a Massachusetts corporation with offices in Woodstock, Maryland, for development of the ASIC Product.  In 2003, Plaintiff discovered that Defendant had filed for exclusive patent protection on the parties' joint RF ASIC technology.  On or about July 2, 2003, Defendant assigned an undivided, one-half interest in the RF ASIC patent application and invention to Plaintiff pursuant to an assignment dated July 2, 2003.

After the fourth production spin failed to meet the ASIC specification, counsel for Plaintiff sent a letter dated April 12, 2006, confirming that the fourth spin did not meet specifications and as a result the JDA and PPA terminated pursuant to § 2.7.3 of

---

[3] Section 1.7 of the JDA defines ASIC Product as "the RF ASIC to be designed by Intrinsix."  Section 1.8 states that "'ASIC Production Facility' means the production facility selected by Intrinsix and MobiApps to produce the ASIC Product."

the JDA.  In a letter dated April 12, 2006, Defendant responded by demanding that Plaintiff immediately cease all design and development activities with respect to the ASIC Product and terminate activity with its vendors, including Intrinsix.[4]

Plaintiff claims it retains joint ownership of the ASIC Product based on § 6.3 and § 12.3 of the JDA.[5]  Defendant claims that Plaintiff's right to the ASIC Product terminated with the JDA and that Plaintiff does not have the right to exploit the ASIC Product and other joint technology developed during the term of the JDA.

Plaintiff filed its complaint on April 29, 2006, and an amended complaint on May 3, 2006.  In the amended complaint, Plaintiff seeks two forms of relief: a preliminary and permanent injunction (Count I) and a declaratory judgment (Count II).  (Paper 3).  In the first count, Plaintiff seeks an injunction declaring that it has joint ownership of the ASIC Product; that it has the right to use the ASIC Product for its own purposes; and that its right of joint ownership survives the termination of the JDA. Plaintiff further seeks an injunction preventing Defendant from

---

[4] Plaintiff believes that Defendant plans to advise Plaintiff's vendors that Plaintiff does not have any right to the ASIC Product and/or otherwise communicate false or misleading information to Plaintiff's vendors.

[5] Section 12.3(c) provides: "Upon any termination of this Restated Agreement, those rights, obligations, and covenants that would naturally survive the termination of this Restated Agreement shall survive such termination."

communicating false or misleading information to Plaintiff's vendors or otherwise interfering unlawfully with Plaintiff's relationship with its vendors.  In the second count, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 that Plaintiff has joint ownership of the ASIC Product; that Plaintiff has the right to use the ASIC Product for its own purposes and to further develop the ASIC Product in any manner; and that Plaintiff's right of joint ownership survives the termination of the JDA.

On July 10, 2006, Defendant filed a motion to dismiss or to transfer the case to the United States District Court for the Southern District of California on the bases of improper venue and lack of personal jurisdiction.  The motion includes a declaration by James C. Moir, vice president of contracts and administration for Defendant, who provides the following information regarding Defendant's contacts with Maryland.

Mr. Moir states that discussions between Plaintiff and Defendant began in January 2002 when Plaintiff approached Defendant because it wanted to develop a small ORBCOMM modem (transceiver). Plaintiff proposed that Defendant and Plaintiff jointly develop a small RF ASIC that would contain Defendant's small transceiver design in a tiny package.  When the discussions between Plaintiff and Defendant began, Plaintiff's office was in Arlington, Virginia. On or about January 25, 2002, Anu Pahuja, managing director of

MobiApps, and Bill Vaughan, who also worked for MobiApps, traveled to Defendant's San Diego offices to begin negotiations of the initial agreement.  The JDA and the PPA were negotiated face-to-face in San Diego in February 2003.  While negotiating the JDA, Defendant insisted on a requirement that California law control the Agreements because it believed that California law would provide a better level of protection than the law of Virginia.

In addition, Plaintiff's executives made "numerous trips" to Defendant's San Diego offices, most recently on April 11, 2006, when Plaintiff first raised the termination of the JDA.  Mr. Moir states that, to his best recollection, the only time an executive representing Defendant visited Plaintiff's office in Arlington, Virginia, was on March 12, 2003, when Defendant's CEO signed the Revised JDA.  All engineering meetings between Plaintiff and Defendant took place in San Diego, and Plaintiff's engineers from Asia often traveled from Asia to San Diego for these meetings.[6]

In October 2005, Plaintiff moved its United States offices from Virginia to Maryland.  Defendant's representatives have never visited the Maryland office. Mr. Moir states that "it was represented to us that the work could be performed in Massachusetts, North Carolina, and/or Virginia, at the discretion

---

[6] Mr. Moir asserts that MobiApps has offices in Bangalore, India, and in Singapore.

of MobiApps, and there was no request or requirement by Quake that any work be performed in Maryland." (Paper 5, Moir decl. ¶ 7).

Mr. Moir states that Defendant's only connection with Maryland involved Mr. Vaughan, who had represented Plaintiff in its negotiations with Defendant but who subsequently joined Defendant's company. Mr. Vaughan's employment with Defendant lasted from October 2004 to June 2, 2005, and was unrelated to the performance of the JDA. Mr. Vaughan worked from his home in Rockville, Maryland, as a "transitional accommodation," and he traveled "a great deal," spending much of his time in San Diego "and elsewhere." (Paper 5, Moir decl. ¶ 11).

In response, Plaintiff provides a declaration from Ms. Pahuja in which she provides the following statements regarding Defendant's contacts with Maryland. Plaintiff was introduced to Defendant by Orbcomm, Inc., the satellite provider for both parties, at a meeting in Virginia. The Agreements were negotiated over a period of several weeks. The initial negotiations were conducted at Orbcomm's office in Virginia during a face-to-face meeting between Plaintiff and Defendant. Much of the negotiations took place over the telephone with Plaintiff's personnel in Virginia. She concedes that some of the negotiations took place in

8

California, but states that Plaintiff did not execute the Agreements while in California.[7]

Ms. Pahuja states that "[a]s agreed in the JDA, MobiApps contracted with Intrinsix's Maryland office and, pursuant to such contract, Intrinsix developed the RF ASIC." (Paper 7, Pahuja decl. ¶ 14). She also asserts that "Quake agreed that Intrinsix would develop the RF ASIC specification on behalf of Quake and MobiApps in Maryland." (Paper 7, Pahuja decl. ¶ 15). The ASIC project was run out of the Maryland offices of Intrinsix. Ms. Pahuja states that the business manager, Tom Trew, and the project manager, Mike Irving, both were located in Maryland.[8] The majority of the work for the digital section of the ASIC project was performed by Mr. Irving and his design team in Maryland. In addition, work relating to the analog section of the ASIC project was performed in Maryland. Additional Intrinsix employees worked on the analog section at Intrinsix's facility in New York.

Since 2004, Defendant participated in weekly conference calls with Plaintiff's personnel, first in Virginia and then in Maryland. The Intrinsix personnel located in Maryland and Virginia also participated in these phone calls.

---

[7] Ms. Pahuja does not state exactly where Plaintiff executed the Agreements.

[8] The declaration does not state clearly whether Mr. Trew and Mr. Irving worked for Plaintiff, Defendant, or Instrisix. It appears that Mr. Trew and Mr. Irving are employees of Intrinsix.

Ms. Pahuja further asserts that Mr. Vaughan "played an integral part" in the development of the RF ASIC. (Paper 7, Pahuja decl. ¶ 22). She states that "Mr. Vaughan was a MobiApps employee who, on behalf of MobiApps, negotiated the Agreements and managed the RF ASIC development project. Mr. Vaughan left MobiApps to work for Quake." *Id*. at ¶ 23. She states that "[i]t is my understanding that during the time Mr. Vaughan was a Quake employee he was located in Maryland and performed his duties on behalf of Quake in Maryland." *Id.* at ¶ 24.

Defendant's reply memorandum contains a further declaration from Mr. Moir that disputes certain assertions made by Ms. Pahuja. He insists that Plaintiff approached Defendant and Orbcomm's role in introducing the parties was minimal. He further states that any discussions that took place at Orbcomm's office in Virginia were minimal. The first negotiations actually took place during a multi-day negotiation session held later in San Diego.

Mr. Moir notes that Intrinsix has several offices and Plaintiff chose the location where the work would be done. He also states that MobiApps paid Intrinsix for the development of the ASIC Product development, and thus Plaintiff contracted with Intrinsix, not Defendant. He contends that "Quake did not 'agree' that Intrinsix would develop the RF ASIC because Quake had no say in the decision. In fact, MobiApps retained Intrinsix over Quake's

objections, as Quake did not believe that Intrinsix was qualified to do the work." (Paper 10, Moir decl. ¶ 5).

Lastly, Mr. Moir asserts that Mr. Vaughan was not involved in the RF ASIC Product when Mr. Vaughan began working for Defendant in October 2004. In support, he provides an e-mail in which Mr. Vaughan tells Ms. Pahuja that "with respect to any matters related to the ASIC, you should contact Polina directly." (Paper 10, ex. A). Defendant explains that "Polina" is Polina Braunstein, the president and CEO of Quake. Mr. Moir also provides a copy of an e-mail thread that shows Mr. Vaughan being copied on e-mails relating to ASIC while he worked for Plaintiff, but no longer being copied on e-mails after Mr. Vaughan began working for Defendant. *Id.* at ex. B.

## II. Personal Jurisdiction

### A. Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary

11

hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).   If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676.   In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

## B.  Analysis

A federal district court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). The Court of Appeals of Maryland has "consistently held that the that the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15 (2005). Yet, courts may not "simply dispense with analysis under the long-arm statute," but rather,

must interpret it "to the limits permitted by the Due Process Clause when [they] can do so consistently with the canons of statutory construction." *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6 (2006).

## 1. Maryland Long-Arm Statute

Maryland's statute provides in part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
>> (1) Transacts any business or performs any character of work or service in the State; . . .

Md. Code Ann., Cts. & Jud. Proc., § 6-103(b).  There is a limiting condition in subsection (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."

Plaintiff asserts that personal jurisdiction is proper over Defendant based on § 6-103(b)(1).  Transacting business pursuant to subsection (b)(1) "requires 'actions [that] culminate in purposeful activity within the state.'" *Bahn v. Chi. Motor Club Ins. Co.*, 98 Md.App. 559, 568 (1993); *Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992); *Sleph v. Radtke*, 76 Md.App. 418, 427 (1988), *cert. denied*, 314 Md. 193 (1988).  Where the contacts involve a contract, "Maryland courts could and would assert jurisdiction over a party to a contract in a suit for breach of that contract if the party has performed 'purposeful acts' in Maryland 'in relation to the contract, albeit preliminary or

13

subsequent to its execution.'" *Du-Al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1232 (4th Cir. 1976)(citing *Novack v. Nat'l Hot Rod Ass'n*, 247 Md. 350, 357 (1967)). Subsection (b)(1) does not require the defendant to have been present physically in Maryland. *See Bahn*, 98 Md.App. at 568 (stating that under this subsection "[t]he defendant need never have been physically present in the state"); *Sleph*, 76 Md.App. at 427 (stating that a "nonresident who has never entered the State . . . may be deemed to have 'transacted business' in the State within the meaning of subsection (b)(1) as long as his or her actions culminate in 'purposeful activity' within the State").

**2. Due Process**

The exercise of personal jurisdiction over a nonresident "depends on whether the defendant's contacts with the forum state provide the basis for the suit." *See Mitrano v. Hawes*, 377 F.3d 402, 406-07 (4th Cir. 2004) (citing *Carefirst of Md. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 397 (4th Cir. 2003)). Where, as here, the plaintiff contends that personal jurisdiction is proper based on specific jurisdiction, the court must examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv.*

14

*Consultants, Inc.*, 293 F.3d 707, 712 (4ᵗʰ Cir. 2002). Furthermore, "[a] defendant should be able to anticipate being sued in a court that can exercise personal jurisdiction over him; thus, to justify such an exercise of jurisdiction, a defendant's actions must have been 'directed at the forum state in more than a random, fortuitous, or attenuated way.'" *Mitrano*, 377 F.3d at 407 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4ᵗʰ Cir. 1997)).

The first factor, purposeful availment, is satisfied where a nonresident defendant purposefully has engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Where the case involves a contract with a nonresident defendant:

> [T]he court must perform an individualized and pragmatic inquiry into the surrounding facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine "whether the defendant purposefully established minimum contacts within the forum." [*Burger King Corp.*, 471 U.S.] at 479, 105 S.Ct. 2174; *see also Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F.Supp.2d 622, 626 (D.Md. 2000). Among the specific facts that courts have weighed are "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made." *Mun. Mortgage & Equity*, 93 F.Supp.2d at 626 (internal quotation omitted). One of the most important factors is "whether the defendant initiated the business relationship in some way." *See id.* at 626-27

> (quoting *Nueva Eng'g, Inc. v. Accurate Elecs.,
> Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986)).
> Ultimately, the question is whether the
> contract had a "substantial connection" to the
> forum state.   *Burger King*, 471 U.S. at 479,
> 105 S.Ct. 2174; *Diamond Healthcare of Ohio,
> Inc. v. Humility of Mary Health Partners*, 229
> F.3d 448, 451 (4th Cir. 2000).

*Johansson Corp. v. Bowness Const. Co.*, 304 F.Supp.2d 701, 705

(D.Md. 2004).

## 3. Discussion

Plaintiff asserts that Defendant has sufficient contacts with

Maryland to satisfy subsection (b)(1) of the Maryland Long-Arm

Statute and the requirements of due process.   First, Defendant

entered into Agreements for technology development to be performed

in Maryland.   Second, during the contractual relationship, "Quake

chose to employ Mr. Vaughan in Maryland.   Mr. Vaughan had primary

responsibility for this technology development during his

employment by MobiApps in Maryland.   Mr. Vaughan was then employed

by Quake, also in Maryland."   (Paper 7, at 8).    Third, the

development of the ASIC Product took place in Maryland.   Fourth,

after Plaintiff moved to Maryland, Defendant's involvement with the

project continued and included participation in weekly conference

calls to monitor the project.   *Id.* at 8-9.   Defendant responds that

it never purposefully availed itself of the privilege of doing

business in Maryland.[9]   Defendant contends that Plaintiff, a Texas

---

[9] Defendant's argument does not address the Maryland long-arm
(continued...)

16

corporation originally doing business in Virginia, approached it, and that Plaintiff unilaterally moved to Maryland.  Defendant also points out that pursuant to § 1.8 of the JDA, the location of the production facility was chosen by Plaintiff and Intrinsix without input from Defendant.  (Paper 5, at 7).  "The JDA says nothing about Intrinsix having offices or performing services in Maryland, or MobiApps contracting with 'Intrinsix's Maryland office.'"[10] (Paper 9, at 2).

The declarations provided by Plaintiff and Defendant show that the negotiations that led up to the Agreements were unrelated to Maryland and involved two parties, neither of whom were Maryland residents at the time.  For instance, the negotiations occurred in either Virginia or in California, and the signing of the Agreements did not occur in Maryland.[11]  These discussions took place between

---

[9](...continued)
statute, and instead proceeds directly to the due process prong of the personal jurisdiction test.  Nevertheless, parts of Defendant's argument are applicable to the statutory test as well.

[10] In its reply memorandum, Defendant also argues that, under California law, there is no freestanding cause of action for an injunction and that declaratory relief is not a proper basis for relief because the present action involves a contract dispute and declaratory relief is available only to prevent future harms. (Paper 9, at 5-7).  It is not entirely clear how these arguments pertain to personal jurisdiction and venue.  To the extent that Defendant asserts that Plaintiff has failed to state a claim, raising this argument for the first time in a reply memorandum is inappropriate.

[11] Although it is unclear where Plaintiff signed the Agreements, neither party claims that Plaintiff signed the Agreements in Maryland.

Defendant, a California resident, and Plaintiff, a Virginia resident. Although Defendant claims that Plaintiff approached Defendant and Plaintiff claims that the parties were introduced to each other by a third party, Plaintiff does not allege that Defendant initiated contact.[12]

The terms of the Agreements do not demonstrate activity aimed at Maryland or a Maryland resident. JDA and the PPA state that these agreements are between "MobiApps, Inc., a Texas corporation, with offices at 1000 Wilson Blvd., Suite 905, Arlington, VA 22209 and Quake Global, Inc., . . . a California corporation" with offices in San Diego. (Paper 1, ex. 1, at 1; ex. 2, at 1). The JDA states that "[a]ll notices, requests, demands, orders or communications shall be deemed effective upon receipt in accordance with this Section 14.7" and provides that notices shall be sent to Plaintiff's offices in Virginia and Quake's addresses in California.[13] In addition, the JDA provides that it shall be governed, construed and enforced in accordance with the laws of the state of California. *Id.* at § 14.10. "[A] choice of law provision which opts away from the forum state, when combined with other factors disfavoring the exercise of personal jurisdiction, raises

_____

[12] The conflict in the declarations as to whether Plaintiff approached Defendant is immaterial because Plaintiff was not a Maryland resident at the time.

[13] Plaintiff has presented no evidence that either the JDA or the PPA was amended to reflect Plaintiff's new residency in Maryland.

the negative implication that personal jurisdiction in the forum state was not contemplated." *Johansson Corp*., 304 F.Supp.2d at 707-08 (quoting *Mortgage Equity*, 93 F.Supp.2d at 629 n. 6).

The JDA does not state expressly that development of the ASIC Product would be performed in Maryland.  Instead, the JDA provides that Intrinsix Corp., of Westboro, Massachusetts, was "selected and contracted by MobiApps" to develop the ASIC product (paper 1, ex. 1 § 2.1), and that the "'ASIC Production Facility' means the production facility selected by Intrinsix and MobiApps to produce the ASIC Product." *Id*. at § 1.8.  Defendant contends that the location of the production facility was chosen by Plaintiff and Intrinsix without input from Defendant, and Plaintiff does not dispute this assertion.[14]

Mr. Moir states without contradiction that none of Defendant's employees visited Plaintiff's Maryland office in connection with the ASIC Product.  The only person employed by Defendant in Maryland was Mr. Vaughan, but his employment with Defendant was unrelated to the ASIC Product.  Although Plaintiff asserts that Mr. Vaughan was involved in the development of the ASIC Product, a

_____

[14] Ms. Pahuja stated that "[a]s agreed in the JDA, MobiApps contracted with Intrinsix's Maryland office" (paper 7, Pahuja decl. ¶ 14) and "Quake agreed that Intrinsix would develop the RF ASIC specification on behalf of Quake and MobiApps in Maryland," *id.* at ¶ 15.  These assertions do not contradict Defendant's claim that Plaintiff chose the location of the production facility without Defendant's input.  Moreover, the JDA does not require that Plaintiff contract specifically with the Maryland office of Intrinsix.

careful reading of Ms. Pahuja's declaration shows that the involvement occurred while Mr. Vaughan was employed by Plaintiff and ended after he joined Defendant's employment.[15]   Consequently, Mr. Vaughan's employment with Defendant does not qualify as a contact for purposes of personal jurisdiction because it was unrelated to the ASIC Product.

Plaintiff's argument that Defendant continued to participate with Plaintiff on the ASIC Product after Plaintiff moved to Maryland and that much of the ASIC Product was developed in Maryland does little to bolster Plaintiff's position because the court looks to the actions of the defendant and not the "unilateral activity" of other parties such as the plaintiff.  *See Asahi Metal Indus. Co., Ltd. v. California*, 480 U.S. 102, 112 (1987)(stating that "[t]he substantial connection between the defendant and the

---

[15] Ms. Pahuja does not say expressly that Mr. Vaughan worked on the ASIC Product while employed by Defendant.  She only states that:

> 23. Mr. Vaughan was a MobiApps employee who, on behalf of MobiApps, negotiated the Agreements and managed the RF ASIC development project.  Mr. Vaughan left MobiApps to work for Quake.

> 24. It is my understanding that during the time Mr. Vaughan was a Quake employee he was located in Maryland and performed his duties on behalf of Quake in Maryland.  Presently Mr. Vaughan is not employed by MobiApps or Quake but still works and resides in Maryland.

(Paper 7, Pahuja decl. ¶¶ 23, 24).  Thus, she never states that Mr. Vaughan worked on the ASIC Product while employed by Defendant.

forum state necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*" (citation and quotation marks omitted, emphasis in original)); *World-Wide Volkeswagen Corp v. Woodson*, 444 U.S. 286, 286-98 (1980)(stating that the plaintiff's act of taking the vehicle into the state of Oklahoma, where the vehicle was involved in an accident, was not a purposeful act by the defendant in Oklahoma); *Hanson v. Denckla*, 357 U.S. 235, 254 (1958)(holding that the defendant performed no purposeful act in the forum state of Florida where the trust instrument was executed in Pennsylvania and Delaware and plaintiff subsequently moved to Florida and executed the will in Florida).

The cases Plaintiff cites in support of jurisdiction differ factually from the present case.[16]  For instance, in *Bahn v. Chicago Motor Club Insurance Co.*, after the plaintiff moved to Maryland, the defendant renewed its contract with the plaintiff, and therefore, the contract was entered into in Maryland while the plaintiff was a Maryland resident.  *Bahn*, 98 Md.App. at 570.  In *Prince v. Illien Adoptions International, Ltd.*, although meetings between the plaintiff and defendant took place outside of Maryland, the adoption contract that gave rise to the cause of action was the

---

[16] Plaintiff's reliance on *Cortex Surveillance Automation, Inc. v. Security Integrators and Consultants, Inc.*, No. 1:05CV5622006, WL 994951 (M.D.N.C. Apr. 12, 2006), is misplaced.  The case involves an interpretation of North Carolina's long-arm statute, not the Maryland long-arm statute.

result of the defendant's solicitation of business in Maryland; the plaintiff signed the contract in Maryland; and the contract provided for a supervisory period after the adopted child was placed into the Maryland home. *Prince*, 806, F.Supp. at 1229.

Thus, using the factors discussed in *Johansson Corp.*, Plaintiff has not established the first element of the due process prong that Defendant purposefully availed itself of the benefits and protections of Maryland law. Accordingly, Plaintiff has satisfied neither the Maryland Long-Arm Statute, nor the due process requirement and Defendant is not subject to the exercise of personal jurisdiction here.

## III. Transfer or Dismissal

The next question is whether the appropriate remedy is to dismiss or to transfer the case:

> While this finding would ordinarily be grounds for the court to grant Defendant's Motion to Dismiss, the Court observes that under 28 U.S.C. § 1406(a) it may, if a civil action is commenced in the wrong district, transfer the case to any district in which it could have been brought. The court is authorized to act pursuant to this statute even if it finds that in personam jurisdiction of the defendant is lacking.

*Hardnett v. Duquesne Univ.*, 897 F.Supp. 920, 925 (D.Md. 1995)(citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463 (1962)). When a "court lacks personal jurisdiction over [a] defendant, venue is also inappropriate in this forum." *L.H. Carbide Corp. v. Piece*

22

*Maker Corp.,* 852 F. Supp. 1425, 1436 (N.D.Ind. 1996).  In cases where venue has been laid improperly, 28 U.S.C. § 1406(a) provides that the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Defendant asserts that the Agreements contain a choice of law clause designating California as controlling law, and that it "is entitled to have these agreements construed under California law by a California court and this action should, for reasons explained herein, either be dismissed or transferred to the United States District Court for the Southern District of California."[17]  (Paper 5, at 2-3).  Plaintiff responds that transfer is not warranted and in support relies on 28 U.S.C. § 1404(a).[18]  Due to the court's lack of personal jurisdiction over Defendant, transferring the case pursuant to § 1406(a) rather than § 1404(a) is the proper way to cure the jurisdictional defect.[19]  *See L.H. Carbide Corp.,* 852 F. Supp. at 1436 (finding that transfer pursuant to § 1406(a) rather

---

[17] There is no choice of forum provision in the Agreements. Defendant provides no case law or explanation as to why a federal district court sitting in diversity cannot apply California law.

[18] 28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[19] In the light of the foregoing, the court need not consider Defendant's arguments relating to 28 U.S.C. § 1404(a).

than the requested § 1404(a) would be more appropriate in a case where court lacked personal jurisdiction over defendant).

Plaintiff has not articulated whether it prefers to have the case dismissed or transferred to California, as requested by Defendant.[20]  Accordingly, Plaintiff is directed to notify the court as to whether it consents to transfer to the United States District Court for the Southern District of California.  Barring consent to that transfer, the case will be dismissed.

## IV.  Motion to File Surreply

Plaintiff has filed a motion pursuant to Local Rule 105(2)(a) for leave to file a surreply to Defendant's motion to dismiss or transfer action.  (Paper 13).  Plaintiff explained that after Defendant filed its "Reply Memorandum in support of Motion to Dismiss or Transfer Action Based on Improper Venue and Lack of Personal Jurisdiction," the electronic docket indicated that replies were due by July 10, 2006.[21]  Accordingly, Plaintiff filed a surreply on July 10, 2006, which was rejected by the clerk on July 11, 2006.  Plaintiff then filed the present motion for leave to file surreply stating: "to the extent that the docket entry

---

[20] While personal jurisdiction is lacking in Maryland, the court expresses no view as to whether personal jurisdiction might exist in some district other than the Southern District of California.

[21] Plaintiff noted that Defendant's reply memorandum was filed under the electronic filing category for a "response" instead of a "reply," which may explain why the filing triggered the system to assign another date for a reply.

itself or MobiApp's interpretation of the entry was in error, MobiApps respectfully requests that the Court consider the Sur-Reply upon consideration of Quake's Motion to Dismiss." (Paper 13, at 2).

Unless ordered by the court, surreply memoranda are not permitted to be filed, *see* Local Rule 105.2(a), although the court may permit surreplies when the moving party would be unable to challenge matters presented to the court for the first time in the opposing party's reply. *See Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003), *aff'd*, 85 Fed.Appx. 960 (4th Cir. 2004) (unpublished disposition). Because Plaintiff does not assert that Defendant has presented a new matter in its reply memorandum, Plaintiff's motion for leave to file surreply will be denied.[22]

## V.  Conclusion

For the foregoing reasons, the court lacks personal jurisdiction over Defendant. Unless Plaintiff consents to transfer to the United States District Court for the Southern District of California, the case will be dismissed. A separate Order will follow.

```
              /s/
```
DEBORAH K. CHASANOW
United States District Judge

---

[22] Even if the court considered Plaintiff's surreply, much of the argument addresses transfer pursuant to 28 U.S.C. § 1404(a), which, as discussed previously, is an improper basis for transfer in light of the lack of personal jurisdiction over Defendant.